# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-CV-24670-RAR

**NICOLAS A. MANZINI**,

      Plaintiff,

v.

**TALBERT CYPRESS,** and
**LUCAS K. OSCEOLA**,

      Defendants.

_____/

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
### AND DENYING AS MOOT DEFENDANTS' MOTION TO QUASH

**THIS CAUSE** comes before the Court upon Defendants' Motion to Dismiss, [ECF No. 21] ("MTD"), and Defendants' Motion to Quash Service of Process, [ECF No. 22], both filed on February 5, 2025.[1]  In the Motion to Dismiss, Defendants Talbert Cypress and Lucas K. Osceola maintain that this Court does not have subject matter jurisdiction.  *See* MTD, at 6–17.  Defendants also assert that if this Court finds that it has jurisdiction, Plaintiff has failed to state a claim.  *Id.* at 17–25.  Plaintiff relies on the Indian Gaming Regulatory Act of 1988 ("IGRA") and regulations of the National Indian Gaming Commission ("NIGC") to underpin both federal question jurisdiction and the state law violations he alleges under the Florida Unfair and Deceptive Trade Practices Act ("FDUTPA") and the common law torts of conversion and unjust enrichment.  Am. Compl. at 12, 16.

As explained herein, the Court finds that: 1) it does have subject matter jurisdiction to review this action because it presents a question of federal law; 2) sovereign immunity bars

---

[1] Both Motions are fully briefed and ripe for adjudication.  *See* Pl.'s Opp'n to Defs.' Mot. to Dismiss, [ECF No. 27]; Reply to Resp. in Opp'n to Mot. to Dismiss, [ECF No. 29]; Pl.'s Opp'n to Defs.' Mot. to Quash, [ECF No. 26]; Reply in Support of Mot. to Quash, [ECF No. 28].

Plaintiff's state-law claims but not his federal claims, which fall under the *Ex Parte Young* doctrine; and 3) Plaintiff's federal claims ultimately fail because neither IGRA, nor the regulations of the NIGC, provide for a private right of action. Accordingly, having reviewed the briefs, the record, and applicable law, and being otherwise fully advised, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss is **GRANTED** and Defendants' Motion to Quash is **DENIED AS MOOT** for the reasons stated herein.

## BACKGROUND

On November 27, 2024, Nicolas A. Manzini, a former lawyer proceeding *pro se*, filed a Complaint alleging that Defendants Talbert Cypress, the Chairman of the Miccosukee General Council, and Lucas K. Osceola, the Assistant Chairman of the Miccosukee General Council, in their individual and official capacities violated the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701–2721 (1988); regulations of the National Indian Gaming Commission, 25 U.S.C. § 2704(a), (b)(1); and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* Compl., [ECF No. 1] ¶¶ 28–39. The Complaint also alleged claims for Conversion and Unjust Enrichment, *see id.*, and requested declaratory and injunctive relief under the Federal Declaratory Judgment Act, *id.* at ¶¶ 41–45. Plaintiff asserted that this Court's jurisdiction arose from "the Tribe's status as a federally recognized Indian tribe and Defendants' violations of federal law, to-wit, the IGRA and the NIGC's regulations." *Id.* at ¶ 5.

On January 13, 2025, the Court issued an Order to Show Cause requiring a supplemental clarification of jurisdiction, given the precedents set by *Ex Parte Young*, 209 U.S. 123 (1908); *Tamiami Partners By & Through Tamiami Dev. Corp. v. Miccosukee Tribe of Indians of Fla.*, 63 F.3d 1030 (11th Cir. 1995); and *Florida v. Seminole Tribe of Fla.*, 181 F.3d 1237 (11th Cir. 1999). *See* [ECF No. 9]. In response, Plaintiff filed both a Response to the January 13, 2025 Order to Show Cause, [ECF No. 13], and an Amended Complaint, [ECF No. 12].

In the Response to the Order to Show Cause, filed on January 21, 2025, [ECF No. 13], Plaintiff asserted this Court had subject matter jurisdiction on the basis of both federal question and diversity jurisdiction. *Id.* at 1–2. Specifically, Plaintiff averred that federal question jurisdiction arises "from Defendants Cypress and Osceola's status as members and officers of a federally recognized Indian tribe who have violated federal law, to-wit, IGRA and the NIGC'S regulations." *Id.* at 2. Plaintiff avers that diversity jurisdiction arises from the fact that he is a resident of Florida while Defendants Cypress and Osceola are foreign defendants because they are members of a federally recognized tribe; he does not address the amount-in-controversy requirement. *Id.*

In his Amended Complaint, filed contemporaneously with the jurisdictional response, Plaintiff details this action's factual basis, which pertains to Defendants' direction of tribal operations at the Miccosukee Resort & Gaming Casino. *See generally* Am. Compl. Plaintiff alleges that the Tribe "has made false and misleading statements to deceive Plaintiff . . . and [] countless other casino patrons" through "refusing to refund cash change," and by "taxing its players by manipulating the cash-out system employed by its electronic gaming systems (slot machines)." *Id.* ¶¶ 1–2, 13. Plaintiff alleges that Defendants Cypress and Osceola are responsible for overseeing tribal gaming operations through their roles as Miccosukee Business Council officers and that in these roles, they have acted in bad faith and beyond the scope of their authority. *Id.* ¶¶ 4, 6.

The purported manipulation of the casino's cash-out system involves their automatic cash-out machines, or "kiosks." During the COVID-19 pandemic, there was a coin shortage during which the casino changed the cash-out system (the conversion of credits into U.S. currency) by discontinuing the refund of coins in the kiosks. *Id.* ¶¶ 14–20. Before the coin shortage, the kiosks gave exact change, but now the kiosks round down to the nearest dollar for the cash refund and

otherwise issue a "change voucher" worth the remaining value of the coins, which can be redeemed at the cashier's window. *Id.* ¶¶ 21–22. So, for example, if a person cashed out $1.35 worth of credits, they would receive $1 dollar from the kiosk and a voucher for $0.35 that could be redeemed at the cashier's window. *Id.* ¶ 21.

The allegedly deceptive part of this exchange is that the voucher refund kiosks fail to inform patrons that they do not dispense coins until after the patron has received the voucher—nor do the kiosks or the vouchers themselves inform patrons that they must visit the cashier's window to receive their change. *Id.* ¶ 23. Plaintiff also takes issue with the fact that the change vouchers expire. *Id.* Plaintiff alleges that three other local casinos posted signs explaining that coins would be dispensed only at the cashier's window, *id.* ¶ 26, but that the Miccosukee casino did not expressly inform patrons of this policy until after Plaintiff filed a complaint with the NIGC, *id.* ¶ 27. Plaintiff avers that he informed Defendant Osceola about this fraudulent scheme and that Defendant Osceola disingenuously rejected the complaint,[2] in violation of "both IGRA's mandate that tribal gaming must be conducted in a fair and honest manner and the NIGC's regulation that requires the Tribe to have procedures in place to resolve disputes between the gaming public like Plaintiff and itself." *Id.* ¶¶ 28–29. Lastly, Plaintiff maintains that the Tribe's decision to permanently ban him from tribal facilities and territories was in violation of IGRA and NIGC

---

[2] Plaintiff attaches as an exhibit the response letter from Defendant Osceola addressing his complaint, [ECF No. 12-1]. The letter explains that after the NIGC forwarded the complaint to the tribe, an investigation was conducted and a determination was made that the complaint was without merit. *Id.* The letter then states:

> All patrons have ample information to discern that the change remaining on all redeemed tickets at the Kiosks may be cashed out by simply proceeding to the cashier cage to retrieve said change in coins, or use the remaining credits at any gaming machine within 30 days. This is standard practice at tribal and non-tribal casinos throughout the U.S.

*Id.* In conclusion, the letter adds: "In an abundance of caution, signs have been enhanced throughout regarding the redemption of Kiosk tickets (see attachment), however all rules and procedures remain the same with no alterations." *Id.*

because he engaged in the "protected activity of complaining about the Tribe's unfair and dishonest acts[.]"[3]  *Id.* ¶ 30.

The Amended Complaint contains two causes of action: 1) "Violation of IGRA and NIGC Regulations (FDUTPA, Conversion, Unjust Enrichment)," and 2) "Declaratory and Injunctive Relief Pursuant to the Federal Declaratory Judgment Act."  Am. Compl. at 12, 16.  Plaintiff seeks "individual remedies including actual and compensatory damages, declaratory and injunctive relief, taxable costs and (if applicable at a later date) reasonable attorney's fees which are all expressly recoverable under FDUTPA" or alternatively "declaratory and injunctive relief under the Federal Declaratory Judgment Act."  *Id.* at 5.

On February 5, 2025, Defendants filed a Motion to Dismiss, [ECF No. 21], and a Motion to Quash Service of Process, or in the Alternative, Vacate the Court's Order Authorizing Service of Process by Alternative Means, [ECF No. 22].  In the MTD, Defendants argue that this Court lacks subject matter jurisdiction because: 1) tribal sovereign immunity bars this action, *see* MTD at 6–10; 2) diversity jurisdiction is lacking because Plaintiff fails to allege a sufficient amount-in-controversy and because all parties live in the same state, *see* MTD at 10–12; 3) diversity jurisdiction is lacking under the Class Action Fairness Act ("CAFA"),[4] *see* MTD at 12–13; 4) federal question jurisdiction is lacking, *see* MTD, at 13–17; and 5) Plaintiff's declaratory relief does not confer federal question jurisdiction, *see* MTD at 17.  Defendants also argue that Plaintiff

---

[3] Plaintiff also attaches the Tribe's Trespass Order against him.  [ECF No. 12-1].  Confusingly, the Trespass Order is dated October 7, 2024, while Defendant Osceola's letter responding to Plaintiff's complaints is dated October 31, 2024.  *Id.*  The letter also states that Plaintiff's complaints to the NIGC were dated October 17, 2024 and October 22, 2024.  *Id.*  The Court is not quite sure how a trespass order that pre-dates a complaint could be in retaliation for said complaint; rather, the timeline of events implies that the NIGC complaints might be in response to the trespass order.

[4] Though Plaintiff's allegations, at points, certainly sound like a putative class action is being alleged, *see* Am. Compl., ¶¶ 1, 28, 33, 40, 46 (describing the Tribe's harm to Plaintiff and "countless others"), Plaintiff has not filed as a class representative.  Accordingly, the Court will not address the MTD's CAFA rebuttal.

has failed to state a claim because: 1) no private right of action exists under IGRA or the NIGC, *see* MTD at 17–19; 2) Plaintiff fails to state a claim under FDUTPA, *see* MTD at 19–22; 3) Plaintiff fails to state a claim for conversion, *see* MTD at 22–23; 4) Plaintiff fails to state a claim for unjust enrichment, *see* MTD at 23–24; 5) Plaintiff cannot state a claim for declaratory relief, *see* MTD at 24; and 6) Plaintiff violates pleading rules by combining separate claims for relief in a single count and failing to allege a showing of entitlement to relief, *see* MTD at 24–25. Defendants also argue that 1) service of process was insufficient, *see* MTD at 25; 2) the Miccosukee Tribe of Indians of Florida is a necessary and indispensable party under Rule 19, *see* MTD at 26–28; and 3) that the Amended Complaint is an improper shotgun pleading, *see* MTD at 28.

In response, Plaintiff maintains that this Court has subject matter jurisdiction under both diversity and federal question jurisdiction, and that sovereign immunity does not bar this action. *See generally* Opp'n to MTD. Plaintiff also disputes Defendants' characterizations regarding the sufficiency of the pleadings. *See id.* Regarding jurisdiction, Plaintiff repeats the assertions made in his response to the Order to Show Cause. *Id.* at 7–11. And as for sovereign immunity, Plaintiff states that he is allowed to sue tribal members in their individual capacity—but does not provide any detail about their personal versus official capacity roles in the events underlying this action, nor does he explain how either Defendant acted outside the scope of their authority. *Id.* at 6–7. Plaintiff also states that "[c]ourts have recognized that a private right of action is available to non-Indians under certain circumstances," but does not provide any additional detail or analysis on this point. *Id.* at 7.

## **LEGAL STANDARD**

Federal courts are empowered to hear only those cases "'within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them

by a jurisdictional grant authorized by Congress." *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999). The presumption is that "federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (quoting *Renne v. Geary*, 501 U.S. 312, 316 (1991)). In other words, it is the Court's responsibility to "zealously insure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). When a multitude of jurisdictional questions exist, "there is no mandatory 'sequencing of jurisdictional issues,'" and "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584–85 (1999)).

Defendants bring the Motion to Dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See* MTD at 1. Plaintiff makes rebuttal arguments under both Rule 12(b)(1) and Rule 12(b)(6). *See* Opp'n to MTD at 4–6. Defendants also advance a subset of arguments that sound in Rule 12(b)(6). *See* MTD at 23–25.

Jurisdictional challenges under Federal Rule of Civil Procedure 12(b)(1) "lie within the exclusive province of the trial court." *Bentley v. Miami Air Int'l, Inc.,* No. 16-CV-24607, 2017 WL 8232192, at *2 (S.D. Fla. Feb. 13, 2017). "As the party seeking to invoke the Court's jurisdiction, Plaintiff bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *Big League Ventures, LLC v. Certain Underwriters at Lloyd's, London*, 474 F. Supp. 3d 1279, 1281 (S.D. Fla. 2020).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When evaluating a Rule 12(b)(6) motion to dismiss, the court must accept well-pleaded factual

allegations as true and draw all inferences in favor of the plaintiff. *Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017).

But, "when a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003).  In reviewing a 12(b)(1) motion, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990) (quotation omitted).  Notably, "it is extremely difficult to dismiss a claim for lack of subject matter jurisdiction." *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260 (11th Cir. 1997) (citing *Simanonok v. Simanonok*, 787 F.2d 1517, 1519 (11th Cir. 1986)).

## ANALYSIS

The Miccosukee Tribe of Indians is a federally recognized Indian tribe. *See* Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 89 Fed. Reg. 944, 945 (Jan. 8, 2024).  The Tribe established the Miccosukee Business Council's Gaming Ordinance under tribal law and in accordance with the Indian Gaming Regulatory Act (IGRA).  *See* 25 U.S.C. §§ 2701 *et seq.*; *see also* [ECF No. 21-1].  IGRA "creates a framework for regulating gaming activity on Indian lands." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 785 (2014); *see also* § 2702(3) (describing IGRA's purpose as establishing "regulatory authority . . . [and] standards for gaming on Indian lands").  IGRA is for tribes and states to manage gaming; IGRA is not for private citizens to bring their consumer state law complaints about how a casino is being managed.

This action raises a variety of jurisdictional questions related to subject matter jurisdiction, tribal sovereign immunity, and implied federal statutory private rights of action.  Though the Court

finds that the federal law on which Plaintiff relies—IGRA—imbues this Court with subject matter jurisdiction and that sovereign immunity does not bar all claims, IGRA does not ultimately open the door to federal court here.

## I. Subject Matter Jurisdiction

The Court begins with the issue of subject matter jurisdiction, as it must. *See Am. C.L. Union of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1340 (11th Cir. 2017) ("[B]ecause of the fundamental constitutional precept of limited federal power, a district court should inquire into whether it has [subject-matter] jurisdiction at the earliest possible stage in the proceedings." (internal citations omitted)); *see also Okla. Tax Comm'n v. Graham*, 489 U.S. 838, 841 (1989) ("The jurisdictional question in this case is not affected by the fact that tribal immunity is governed by federal law.").

Defendants assert that this Court does not possess the requisite jurisdiction to hear this action, while Plaintiff assures this Court that it possesses both diversity and federal question jurisdiction. Plaintiff's invocation of IGRA does provide federal question jurisdiction in this case, but Plaintiff's arguments regarding diversity jurisdiction are markedly wrong. The Court begins with the question of diversity jurisdiction.

### A. Diversity Jurisdiction Is Lacking

Diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." 28 U.S.C. § 1332(a)(1). "Where [] the plaintiff asserts diversity jurisdiction, he has the burden to prove that there is diversity" by a preponderance of the evidence. *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1171 (11th Cir. 2007); *see also Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1275 (11th Cir. 2000).

Here, Plaintiff asserts that this Court enjoys diversity jurisdiction because he is a resident of Florida while Defendants Cypress and Osceola are foreign defendants because they are members of a federally recognized tribe. Opp'n to MTD at 9–11. Defendants maintain that there is no diversity in this action because tribal members are citizens of the states where they reside. MTD at 10. Defendants also contend that Plaintiff has failed to allege that the amount in controversy exceeds the sum or value of $75,000. *Id.*

In his response, Plaintiff confusingly asserts that the amount-in-controversy requirement in § 1332 is "irrelevant," explaining that his Amended Complaint "does not contain any limiting language from which the Court can conclude that his prayer for monetary damages falls below the jurisdictional amount." Opp'n to MTD at 9. Plaintiff then cites a single case from 1938 that mentions the existence of the legal certainty test before conclusorily adding that "[m]easured by that standard, it cannot be said to a legal certainty that Plaintiff's Amended Complaint does not satisfy that test." *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938)). Plaintiff also contends that "neither the United States Supreme Court nor the Eleventh Circuit nor any district court within the Eleventh Circuit having controlling or persuasive authority over this Court has ever ruled that for purposes of diversity jurisdiction, members of a federally recognized Indian tribe . . . are deemed citizens of the state where they reside." *Id.* at 10. In Reply, Defendants claim that Plaintiff has misstated the legal certainty test and cite to several binding and persuasive cases supporting the contention that tribal members are citizens of the states in which they reside for purposes of diversity jurisdiction. *See* MTD Reply at 5.

### i.  *Amount-in-Controversy*

Plaintiff does not allege any facts in the Amended Complaint that would satisfy the amount-in-controversy requirement. *See generally* Am. Compl. Though Plaintiff attaches some nearly illegible photos to the Amended Complaint that show at least one approximately $0.40

voucher, *see* [ECF No. 12-1], there is otherwise no allegation that he has suffered any monetary damages—let alone $75,000.  And Plaintiff's seeming invocation of the legal certainty test—"it cannot be said to a legal certainty that Plaintiff's Amended Complaint does not satisfy that test," *see* Am. Compl. at 9—provides no assistance either.

Defendants are correct that Plaintiff misstates that test.  The legal certainty test provides that when "taking [the Plaintiff's] factual allegations as true, the court can dismiss only if it is convinced 'to a legal certainty' that the claims of the plaintiff in question will not exceed $75,000 (the current jurisdictional threshold)."  *McIntosh v. Royal Caribbean Cruises, Ltd.*, 5 F.4th 1309, 1312 (11th Cir. 2021) (quoting *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 346 (1977)).  "However, when the plaintiff pleads an unspecified amount of damages, it bears the burden of proving by a preponderance of the evidence that the claim on which jurisdiction is based exceeds the jurisdictional minimum."  *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1342 (11th Cir. 2018) (internal citations omitted).  "This additional requirement is warranted because there is simply no estimate of damages to which a court may defer."  *Id.*

Plaintiff's contention that the amount-in-controversy requirement is irrelevant because his Amended Complaint contains no limiting language inexcusably flips the burden.  *See* Opp'n to MTD at 9.  Plaintiff bears the burden of meeting the requirements that bestow jurisdiction upon this Court—not Defendant.  But, beyond simply misstating which party bears the burden, Plaintiff also alleges that Defendants possess specific accounting on the quantity of damages, *i.e.*, how many times Plaintiff has received a coin voucher at the casino—and accordingly requests discovery.  Opp'n to MTD at 2–3 n.1.  While there are situations in which jurisdictional discovery is warranted, a plaintiff must make an initial showing sufficient to warrant such discovery.  Here, Plaintiff has failed to meet any burden.

Unfortunately for Plaintiff, the math just does not add up.  *See Young v. Caesars Ent., Inc.*, No. 22-5331, 2023 WL 3295600 (W.D. La. May 05, 2023) (finding as a legal certainty that Plaintiff's identical cash-out kiosk claims could not meet the amount-in-controversy requirement on either an individual or class basis); *see also Scherer v. MGM Resorts Int'l*, No. 1:22cv258-HSO-BWR, 2023 WL 2776675 (S.D. Miss. Apr. 04, 2023) (finding as a legal certainty that Plaintiff's identical cash-out kiosk claims could not meet the amount-in-controversy requirement on a class basis).  Defendants aver it is highly improbable that Plaintiff could meet the threshold because "for Plaintiff to reach the $75,000 amount in controversy, he would need at least 75,576 maximum value ($0.99) change vouchers **for himself** during a period of nearly three years – approximately 56 maximum value change vouchers every day for 1399 days."  MTD at 10.  But given these numbers, it is not *just* highly improbable that Plaintiff could meet this threshold—it is legally certain that he cannot.  Plaintiff has thus failed to establish that the amount-in-controversy requirement is satisfied.

### ii.   Citizenship

Plaintiff asserts that this Court enjoys diversity jurisdiction because he is a citizen of Florida and because "[a]s members of a federally recognized Indian tribe, *i.e.*, a sovereign nation, Defendants Cypress and Osceola are foreign defendants."  Am. Compl. ¶ 4.  Plaintiff is wrong.

The Supreme Court has stated that Native Americans "are citizens of the States in which they reside."  *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 18 n.10 (1987).  Several persuasive authorities, including some within the Eleventh Circuit, have concluded the same.  *See, e.g.*, *Henry-Bey v. Champery Real Est. 2015, LLC*, No. 18-80953, 2018 WL 7824482, at *2 (S.D. Fla. Dec. 18, 2018) (failing to find diversity citizenship requirements met where "Plaintiff appear[ed] to be claiming that, because he is a Native American, he [wa]s not a citizen of the United States and [wa]s instead a 'federal plaintiff' who is diverse from any defendants who are citizens of the

United States"); *Ward v. Mortimer*, No. 10-CV-4154 JSWDW, 2010 WL 3761906, at *1 (E.D.N.Y. Sept. 16, 2010) ("The law is clear that, for diversity purposes, Native Americans residing on reservations are citizens of the state where the reservation is located.").

Tribal members are citizens of the states in which they reside. In this case, both Defendants reside in Florida, an undisputed fact, and Plaintiff also resides in Florida. Since all parties reside in Florida, the diversity requirement is not satisfied.

### B. Federal Question Jurisdiction Is Conferred by IGRA

Federal question jurisdiction exists "only when a federal question is presented on the face of the plaintiff's well-pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (interpreting 28 U.S.C. § 1331). "[A] federal court may dismiss a federal question claim for lack of subject matter jurisdiction only if: (1) 'the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction'; or (2) 'such a claim is wholly insubstantial and frivolous.'" *Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1352 (11th Cir. 1998) (citing *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)).

Defendants contend that there is no federal question jurisdiction here because of the Eleventh Circuit's decision in *Tamiami Partners, Ltd. By and Through Tamiami Development Corp. v. Miccosukee Tribe of Indians of Fla.*, 63 F.3d 1030 (11th Cir. 1995) (*Tamiami II*).[5] Specifically, Defendants argue that under *Tamiami II*,

> the Eleventh Circuit determined that the plaintiffs brought claims arising under the laws of the United States because the plaintiffs had a written agreement with the Tribe that "incorporates – by operation of law if not by reference – the provisions of the IGRA and the NIGC's regulations that govern [the parties' gaming] operations" and "Tamiami's claims that the Tribe has an obligation under IGRA

---

[5] *Tamiami II* is the second of three Eleventh Circuit opinions regarding an IGRA-related dispute between the Miccosukee Tribe and the contractor managing the Tribe's bingo facility that were issued in 1993, 1995, and 1999. *See Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.*, 999 F.2d 503 (11th Cir. 1993) (*Tamiami I*); *Tamiami II*, 63 F.3d 1030; *Tamiami Partners ex rel. Tamiami Dev. Corp. v. Miccosukee Tribe of Indians of Florida*, 177 F.3d 1212 (11th Cir. 1999) (*Tamiami III*).

> and the NIGC's regulations—which the Agreement incorporates—to process an application for a license in good faith and that the Tribe has breached that obligation are claims arising under federal law; hence the district court had subject matter jurisdiction over Tamiami's breach of contract claim against the Tribe."

MTD at 14 (quoting *Tamiami II*, 63 F.3d at 1047). Defendants then continue: "Plaintiff does not allege a written agreement between himself and Defendants, let alone the Miccosukee Tribe of Indians of Florida, incorporating the IGRA or NIGC, such that federal question jurisdiction would exist." MTD at 15. In other words, Defendants maintain that under *Tamiami II*, subject matter jurisdiction only exists where the action incorporates IGRA or the NIGC. *Id.* But this reading is misplaced. The court in *Tamiami II* went on to explain that failure to state a proper cause of action, as the plaintiffs in that case had failed to do, is a merits question; it does not warrant dismissal for want of jurisdiction. *See Tamiami II*, 63 F.3d at 1047 (quoting *Bell*, 327 U.S. at 682). And the Supreme Court has said the same, also in the context of IGRA. *See Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782 (2014).

In *Bay Mills*, the Supreme Court addressed the scope of tribal sovereign immunity in a gaming dispute between the state of Michigan and the Bay Mills Indian Community governed by IGRA. In a footnote, the Court explained that: "The general federal-question statute, 28 U.S.C. § 1331, gives a district court subject matter jurisdiction to decide *any* claim alleging a violation of IGRA. Nothing in § 2710(d)(7)(A)(ii) or any other provision of IGRA limits that grant of jurisdiction (although those provisions may indicate that a party has no statutory right of action)." *Bay Mills*, 572 U.S. at 788 n.2 (emphasis added). Though expressed in a footnote, the Supreme Court could not have been any clearer that an alleged IGRA violation confers federal question jurisdiction upon a district court.[6]

---

[6] The Supreme Court's declaration in *Bay Mills* does not appear to affect the general rule that a federal statute confers federal question jurisdiction "unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'"

Moreover, the conclusion that an alleged violation of IGRA confers jurisdiction—regardless of whether a statutory right of action exists—aligns with precedent outside the context of IGRA.  As the Supreme Court has explained, "[i]t is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case."  *Steel Co.*, 523 U.S. at 89; *see also Bell*, 327 U.S. at 682 (explaining that "[j]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover").  Accordingly, this Court has subject matter jurisdiction by way of federal question under IGRA.  Any questions as to the existence of a statutory right of action are subsequently analyzed as a matter of pleading sufficiency.  *See also M.H.D. v. Westminster Schools*, 172 F.3d 797, 802 n.12 (11th Cir. 1999) ("When a party claims a right that arises under the laws of the United States, a federal court has jurisdiction over the controversy.  If the court concludes that the federal statute provides no relief, . . . then it properly dismisses that cause of action for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or 12(c).").[7]

---

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Bell*, 327 U.S. at 682).  Arguably, here, both IGRA and the errant NIGC regulations are included merely for the purpose of obtaining jurisdiction.  *See*, *e.g.*, *Miccosukee Tribe of Indians of Fla. v. Kraus-Anderson Const. Co.*, 607 F.3d 1268, 1273 (11th Cir. 2010) ("Although this is not a stringent standard, a mere incantation that the cause of action involves a federal question is not always sufficient.").  Because the Court finds that neither IGRA, nor the NIGC regulations provide a private right of action, *see supra* Section III, the Court does not assess whether the inclusion of these statutes was wholly insubstantial and frivolous.  *Cf. Tamiami II*, 63 F.3d at 1047 n.2 (quoting *Bell*, 327 U.S. at 682–83) ("Tamiami's IGRA claims are not 'immaterial and made solely for the purpose of obtaining jurisdiction'; nor are they 'wholly insubstantial and frivolous.'").

[7] Given the presence of federal question jurisdiction under IGRA, the Court has supplemental jurisdiction, *see* 28 U.S.C. § 1367, over Plaintiff's interrelated (but improperly commingled) state-law claims in Count I of the Amended Complaint.  *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 27 (2025) ("But if a complaint includes the requisite federal question, a federal court often has power to decide state-law questions too."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (explaining supplemental jurisdiction exists when the state and federal claims "derive from a common nucleus of operative fact").

## II. Sovereign Immunity

Next, because of "the fundamentally jurisdictional nature of a claim of sovereign immunity," the Court addresses the question of whether sovereign immunity bars Plaintiff's claims. *Seminole Tribe of Fla.*, 181 F.3d at 1241 n.4. Questions of tribal sovereignty must be considered "before reaching the issue of failure to state a claim." *Id.*; *see also Inglish Ints., LLC v. Seminole Tribe of Fla., Inc.*, No. 2:10-CV-367, 2011 WL 208289, at *2 (M.D. Fla. Jan. 21, 2011) (explaining that "even if a federal court has statutory jurisdiction, Indian sovereign immunity is a 'consideration [which] determines whether a court has jurisdiction to hear an action'") (quoting *Taylor v. Ala. Intertribal Council, Title IV J.T.P.A.*, 261 F.3d 1032, 1034 (11th Cir. 2001)).

"Although the Supreme Court has expressed some doubt about the continued wisdom of the tribal immunity doctrine, it is nonetheless clear that '[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity.'" *Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Fla.*, 692 F.3d 1200, 1203–04 (11th Cir. 2012) (citing *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998)). Moreover, "[t]ribal officials ordinarily enjoy sovereign immunity in federal court from claims against them in their official capacities under federal or state law." *Muscogee (Creek) Nation v. Rollin*, 119 F.4th 881, 887 (11th Cir. 2024). There is no dispute here that sovereign immunity as to the tribe, a non-party, has not been waived. However, the Eleventh Circuit has "extended the *Ex parte Young* doctrine to tribal officials" for alleged violations of federal law. *Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1288 (11th Cir. 2015); *see also Muscogee (Creek) Nation*, 119 F.4th at 887 ("But, under *Ex parte Young*, tribal officials are not immune from suits that seek prospective declaratory or injunctive relief against ongoing violations of federal law.").

The Eleventh Circuit's analysis of comparable claims in *Alabama v. PCI Gaming Authority* provides useful guidance in this context. 801 F.3d 1278 (11th Cir. 2015). In *PCI Gaming Authority*, the Eleventh Circuit considered whether tribal officers, sued as individuals in their official capacity, enjoyed sovereign immunity. *Id.* at 1288. The Court considered immunity regarding alleged violations of IGRA and state law separately. *Id.* at 1288–93; *see also Muscogee (Creek) Nation*, 119 F.4th at 887 ("Courts must consider sovereign immunity and any exceptions to it on a claim-by-claim and defendant-by-defendant basis."). Accordingly, this Court will analyze the federal law and state-law claims separately.[8]

### A. Sovereign Immunity Does Not Bar Plaintiff's Federal Law Claims

The Eleventh Circuit began with alleged violations of federal law under IGRA. The Court explained that "'[a]n allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction,' such that the state officer is not immune from suit." *PCI Gaming Auth.*, 801 F.3d at 1288 (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997)). The Court then noted that "[a]lthough tribal officials are generally entitled to immunity for acts taken in their official capacity and within the scope of their authority, 'they are subject to suit under the doctrine of *Ex parte Young* when they act beyond their authority' by violating a federal statute." *Id.* at 1288 (quoting *Tamiami III*, 177 F.3d at 1225). The Court distinguished *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 47 (1996), which bars application of *Ex parte Young* where a detailed remedial scheme exists, by explaining that "*Seminole Tribe I* neither addressed nor decided whether state and tribal officials are immune from

---

[8] Plaintiff does not separately delineate the federal and state-law claims in his Amended Complaint, which bears many of the hallmarks of a "shotgun pleading." *See generally* Am. Compl.; *accord Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). But, for purposes of the sovereign immunity analysis, the Court differentiates Plaintiff's federal law claims under IGRA and NIGC regulations from those under state law, namely violations of FDUTPA, conversion, and unjust enrichment.

other IGRA-based claims to enforce rights for which the statute does not set forth such a detailed, limited remedial scheme." *Id.* at 1289.

Here, Plaintiff similarly invokes sections of IGRA that do not include a detailed remedial scheme barring the application of *Ex parte Young*. And, because Plaintiff alleges that Defendants are committing ongoing violations of federal law outside the scope of their authority, and Plaintiff seeks declaratory and injunctive relief, his federal law claims are not barred by sovereign immunity.[9] *PCI Gaming Auth.*, 801 F.3d at 1288 ("Because [plaintiff] alleges that the Individual Defendants are committing ongoing violations of IGRA, a federal law, and seeks declaratory and injunctive relief to stop the violations, the officials are not entitled to immunity.").

### B. Sovereign Immunity Bars Plaintiff's State-Law Claims

As for the state-law claims in *PCI Gaming Authority*, however, the Eleventh Circuit reached a different conclusion, because "the *Ex parte Young* doctrine does not reach such claims." *Id.* at 1290. The Court explained that "[t]he immunity tribal officials enjoy from state-law claims brought in federal court is narrower than the immunity of state officials from such claims . . . tribal officials may be subject to suit in federal court for violations of state law under the fiction of *Ex parte Young* when their conduct *occurs outside of Indian lands*." *Id.* (citing *Bay Mills*, 572 U.S. at 795–96) (emphasis added); *see also Muscogee (Creek) Nation*, 119 F.4th at 887 ("And although *Ex parte Young* also permits suits against tribal officials for prospective relief against ongoing violations of state law, it permits that relief only when the challenged conduct occurs outside of Indian lands." (internal citations omitted)). However, as Alabama conceded in *PCI Gaming*

---

[9] Plaintiff's allegations are bare and likely do not state a plausible claim for relief. For example, Plaintiff never explains *how* Defendants acted outside the scope of their authority, nor does Plaintiff explain how the harm is ongoing since Defendants have now, as far as the record shows, put up signs alerting customers about the cash-out kiosk system. *See generally* Am. Compl.; *cf.* MTD at 8 ("Plaintiff fails to raise any allegations about what, when, where, or why the Defendants acted beyond their authority."). However, because the federal law upon which Plaintiff's claims rest does not provide a right of action, *see supra* Section III, the Court need not reach the issue of pleading sufficiency.

*Authority*, the "Individual Defendants enjoy immunity from its state law claim if the casinos are located on Indian lands." *PCI Gaming Auth.*, 801 F.3d at 1290.  That is because "tribal immunity 'is a matter of federal law and is not subject to diminution by the States.'" *Bay Mills*, 572 U.S. at 789 (quoting *Kiowa Tribe of Okla.*, 523 U.S. at 756)).  Accordingly, Plaintiff's state-law claims commingled under Count I are barred by sovereign immunity.

### III.   IGRA Affords Jurisdiction but Not a Private Right of Action

As *Bay Mills* instructs, the question of whether a statute such as IGRA confers jurisdiction is clear, but the question of whether it provides a private right of action is an entirely different inquiry.  *See Bay Mills*, 572 U.S. at 788 n.2.  Whether a statute provides a valid cause of action does not implicate subject-matter jurisdiction; rather, it is a pleading question.  *See Steel Co.*, 523 U.S. at 89.  Here, because the federal law upon which Plaintiff relies does not provide a statutory right of action, Plaintiff fails to state a federal claim under Count I.[10]

Defendants assert a litany of reasons why and how Plaintiff fails to state a claim, *see generally* MTD, but the Court need only address the first: that IGRA provides no private right of action.  In support of his assertion that there is, in fact, a private right of action under IGRA, Plaintiff makes one brief conclusory statement and cites a single entirely inapt case.  Plaintiff merely proffers that "Courts have recognized that a private right of action is available to non-

---

[10] As Defendants note, Plaintiff never identifies a specific provision of the NIGC regulations on which to base jurisdiction.  *See* MTD at 15.  Plaintiff, at one point, mentions "25 C.F.R. section 552.2(e)" in relation to NIGC regulations, but as far as the Court can tell, this provision does not exist.  *See* Am. Compl. at 10 n.4.  It is possible that Plaintiff intended to cite to 25 C.F.R. § 522.2(e), titled "Submission requirements," which states that "A tribe shall submit to the Chair via electronic or physical mail all of the following information with a request for approval of a class II or class III ordinance or resolution, or amendment thereto . . . A copy of the procedures for resolving disputes between the gaming public and the tribe or the management contractor."  It is not at all clear to the Court how a private right of action could exist within such a quotidian statute detailing submission requirements for tribal gaming agreements.  Accordingly, without accurate citations or developed arguments, the Court cannot comment.  *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (explaining that liberal construction of *pro se* pleadings "does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action" (quotation omitted)).

Indians under certain circumstances." Opp'n to MTD at 7 (citing *Contour Spa*, 692 F.3d at 1209 (citing *Dry Creek Lodge, Inc. v. Arapahoe & Shoshone Tribes*, 623 F.2d 682, 685 (10th Cir. 1980)). *Contour Spa* determined the scope of tribal sovereign immunity in a case in which a commercial lessee brought an action against the Tribe based on the leasing agreement and the Indian Civil Rights Act (ICRA)—not IGRA. *Contour Spa*, 692 F.3d at 1201. Despite Plaintiff's assertion, it is obvious that the Court in *Contour Spa* did not contemplate a private right of action. After briefly describing the Tenth Circuit's opinion in *Dry Creek Lodge, Inc.*, the Court explained that the district court need not have gone so far as to apply the circuit's framework for determining when ICRA creates an implied right of action because "[t]he law is crystal clear that tribal immunity applies unless there has been congressional abrogation or waiver by the tribe." *Contour Spa*, 692 F.3d at 1209. Then, entirely undermining Plaintiff's argument here, the Court explained that: "The very notion of an implied cause of action against an Indian tribe protected by sovereign immunity is at war with the requirement that Congress must expressly abrogate the tribe's immunity. The Indian Civil Rights Act provides no basis to subject the Seminole Tribe to the instant suit." *Contour Spa*, 692 F.3d at 1209–10.

Plaintiff also attempts to distinguish the Southern District of California's persuasive opinion in *Harris v. Sycuan Band of Diegueno Mission Indians*, No. 08CV2111-WQH-AJB, 2009 WL 5184077 (S.D. Cal. Dec. 18, 2009). In *Harris*, the plaintiff was similarly seeking to hook the question of federal jurisdiction on the remedies provided by IGRA. *Harris*, 2009 WL 5184077, at *1–2. The court found that it did not have jurisdiction to hear the case because IGRA does not confer a private right of action. *Id.* at *6–7. Moreover, as here, the plaintiff in *Harris* tried to cite the same provision of IGRA regarding conformance with the Tribal-State compact, but the court found that "[e]ven if the [complaint] had alleged that [IGRA provisions] were violated, the 'IGRA

provides no general private right of action.'" *Id.* at \*7 (citing *Hein v. Capitan Grande Band of Diegueno Mission Indians*, 201 F.3d 1256, 1260 (9th Cir. 2000)).

Plaintiff first asserts that *Harris* is inapplicable because in that case, the Tribe was the sole defendant and no individual officers were joined.  However, Plaintiff does not explain how this difference overcomes IGRA's lack of a private right of action.  Opp'n to MTD at 8.  The Court's most generous reading is that perhaps Plaintiff means to state that the differing applications of sovereign immunity as to sovereigns compared to individuals somehow translates in equal force to the question of private rights of action.  But with no explanation from Plaintiff, the Court cannot adequately analyze such a claim.  And, in any event, whether a statute confers a private right of action is a different question than whether immunity bars such an action.  *PCI Gaming Auth.*, 801 F.3d at 1293 (analyzing failure to state a claim due to the absence of a right of action *after* determining which claims were barred by sovereign immunity).

Next, Plaintiff maintains *Harris* is distinguishable "because *Tamiami Partners*, 63 F.3d 1030, and *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, amply recognize that a private cause of action exists against individual tribal officials who engage in unlawful conduct."  Opp'n to MTD at 8.  Again, Plaintiff provides no further explanation for this assertion, nor does he even provide a pincite that might point the Court in the direction of a colorable argument.  Moreover, the *Tamiami II* Court disposed of a claim alleging violations of IGRA and the NIGC's regulations on the grounds that there was no right of action.  63 F.3d at 1048 ("We dispose of that claim on the separate ground that, because IGRA provides Tamiami no right of action, Tamiami has failed to state a claim for relief.").

Lastly, Plaintiff declares that *Harris* is distinguishable "because Plaintiff's Amended Complaint expressly requires that the Court interpret discrete provisions of IGRA and the NIGC regulation insofar as the individual Defendants' unlawful conduct is concerned."  Opp'n to MTD

at 9.  Again, Plaintiff provides no further explanation beyond this single conclusory statement and cites no law in support of his position.   Without more, the Court cannot adequately address Plaintiff's arguments as to this purported distinction.

Beyond the obviously relevant application of *Harris*, there is ample case law clearly stating that IGRA does not confer a private right of action.  *See*, *e.g.*, *Hein*, 201 F.3d at 1260 ("IGRA provides no general private right of action."); *Hartman v. Kickapoo Tribe Gaming Comm'n*, 319 F.3d 1230, 1233 (10th Cir. 2003) (holding that "IGRA contains no implied private right of action in favor of an individual seeking to enforce compliance with the statute's provisions."); *Tamiami II*, 63 F.3d at 1049 ("IGRA provides it no right to relief."); *see also Seminole Tribe of Fla.*, 181 F.3d at 1242 (explaining that "ambiguities in federal laws implicating Indian rights must be resolved in the Indians' favor").

Because "where IGRA creates a private cause of action, it does so explicitly" and "[w]here a statute creates a comprehensive regulatory scheme and provides for particular remedies, courts should not expand the coverage of the statute," the Court declines to expand IGRA's coverage. *Hein*, 201 F.3d at 1260 (citations omitted).  Plaintiff cites to no provision of IGRA or the NIGC regulations that explicitly provides a private right of action, and that is because he cannot do so—no such provision exists.  *See Hartman*, 319 F.3d at 1233 ("[N]owhere does IGRA expressly authorize private individuals to sue directly under the statute for failure of a tribe . . . to comply with its provisions.").

Given the widespread agreement that IGRA confers no private right of action, the Court sees no need to delve deeply into the "issue of whether a statute creates by implication a private right of action"—which is "a 'question of statutory construction.'"  *Love v. Delta Air Lines*, 310 F.3d 1347, 1351 (11th Cir. 2002) (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979)). That being said, the Court adds a few observations.

First, the specific provision upon which Plaintiff hinges his argument is an introductory section explaining that IGRA is for the protection of the tribes, not consumers such as himself. Plaintiff's singular IGRA hook is that "Section 2702(b) [sic] of IGRA expressly declares that among the Act's purposes is 'to assure that gaming is conducted fairly and honestly by both the operator [Tribe] and players.'" Am. Compl. at 10 n.4. But the subsection in its entirety relays quite a different meaning. Subsection (2) of § 2702, entitled Declaration of Policy, explains that the purpose of the chapter is:

> to provide a statutory basis for the regulation of gaming by an Indian tribe adequate to *shield it from organized crime and other corrupting influences*, to ensure that *the Indian tribe is the primary beneficiary of the gaming operation*, and to assure that gaming is conducted fairly and honestly by both the operator and players[.]

25 U.S.C. § 2702 (emphases added). Plaintiff's alteration of the quote to add "[Tribe]" is also not entirely accurate. In this case, the Tribe might be operating the casino, but in most of the other IGRA cases cited by the parties, the operator is a contracted third-party in a dispute with the Tribe over an operative gaming agreement. *See*, *e.g.*, *Tamiami I*, 999 F.2d 503; *Tamiami II*, 63 F.3d 1030; *Tamiami III,* 177 F.3d 1212; *Contour Spa*, 692 F.3d 1200. Read in its entirety, this section of IGRA clearly lacks any enforcement language and only seeks to explain a single purpose: IGRA is for tribes—it is not for casino patrons.

Second, though the question of legislative intent comes second to statutory construction in determining whether a private right of action exists, *see Love*, 310 F.3d at 1353 (citing *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001)), it seems illogical that Congress would have contemplated a private right of action for IGRA. Beyond the vital importance of a tribe's self-determination, *see National Farmers Union Insurance Companies v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985) ("Congress is committed to a policy of supporting tribal self-government and self-determination."), the statute was designed to regulate gaming between tribes and states—not to

allow a vehicle for casino patrons to air their grievances.  As the Eleventh Circuit has stated, "[t]he legislative history makes clear the purpose and effect of the statute: to protect the Indian gaming industry from corruption and to provide for extensive federal oversight of all but the most rudimentary forms of Indian gaming."  *Tamiami II*, 63 F.3d at 1033.

Thus, IGRA provides no private right of action and Plaintiff fails to state a claim for relief. And in the words of the Eleventh Circuit: "This result should come as no surprise[.]"  *Tamiami II*, 63 F.3d at 1049.  "[A]s the Supreme Court has observed, 'the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.'"  *Id.* (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)).

## IV.   Plaintiff's Claim Under the Federal Declaratory Judgment Act Fails

Given that there is no private right of action under IGRA and sovereign immunity bars Plaintiffs' state-law claims, the commingled causes of action found under Count I of the Amended Complaint are foreclosed.  That leaves only Count II for declaratory relief under the Federal Declaratory Judgment Act.  *See* Am. Compl at 16.  But under the Act, a court maintains broad discretion over whether to exercise jurisdiction over claims.  "The Declaratory Judgment Act provides that a court '*may* declare the rights and other legal relations of any interested party,' 28 U.S.C. § 2201(a) (emphasis added), not that it *must* do so."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007); *see also Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (explaining the Declaratory Judgment Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so.").  Courts thus have "unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

More importantly, a federal declaratory judgment action requires an "actual controversy." 28 U.S.C. § 2201(a).  To satisfy the "actual controversy" requirement, "there must be a substantial

continuing controversy between two adverse parties." *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1347 (11th Cir. 1999) (quoting *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985) ("The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred.   Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury.")).   "Consequently, a party seeking declaratory relief must satisfy the same jurisdictional requirements prerequisite to the bringing of other suits." *Wendy's Int'l, Inc. v. City of Birmingham*, 868 F.2d 433, 435 (11th Cir. 1989); *see also Antares Underwriting Ltd. v. E&D Mainstreet Corp*, No. 6:21-CV-371-JA-DCI, 2021 WL 6298666, at *1 (M.D. Fla. Oct. 21, 2021) ("Before declaratory relief is available pursuant to the Act, an independent basis for federal jurisdiction must be established.").

Here, given that there is no federal cause of action under IGRA or NIGC regulations and that sovereign immunity bars Plaintiff's remaining state-law claims, there is simply no "actual controversy" remaining.   The Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), "does not provide an independent basis for federal question jurisdiction." *Emmanuel v. Charter Bank, NA, LLP*, No. 616CV2165ORL41KRS, 2017 WL 4271666, at *3 (M.D. Fla. July 31, 2017), report and recommendation adopted sub nom. *Emmanuel v. Charter Bank, NA*, No. 616CV2165ORL41KRS, 2017 WL 4242392 (M.D. Fla. Sept. 22, 2017); *see also Wendy's*, 868 F.2d at 435 ("[T]he Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts but rather 'is operative only in respect to controversies which are such in the constitutional sense . . . Thus the operation of the Declaratory Judgment Act is procedural only.'" (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)).   Indeed, the Amended Complaint "does not contain any allegations which could reasonably support a finding that the [Plaintiff is] likely to be subject to future injury from the application of the statute [he] challenges." *Malowney*, 193 F.3d at 1347.

Accordingly, the Federal Declaratory Judgment Act includes no hook on which to provide this Court with the power to review Plaintiff's claims.  As such, Count II, like Count I, warrants dismissal.

### V.    Tribal Right to Self-Governance

As a final note, there is a reasonable argument that this underlying dispute should have been brought in the tribal courts.  An essential element of sovereignty is self-governance.  *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55 (1978) ("Indian tribes are 'distinct, independent political communities, retaining their original natural rights' in matters of local self-government.") (quoting *Worcester v. Georgia*, 6 Pet. 515, 559 (1832)); *Weeks Const., Inc. v. Oglala Sioux Hous. Auth.,* 797 F.2d 668, 673 (8th Cir. 1986) ("The power to hear and adjudicate disputes arising on Indian land is an essential attribute of that sovereignty.").

Many courts have recognized an exhaustion requirement for disputes that implicate the sovereignty of tribes.  *See* § 3579 Indian Tribes, 13D Fed. Prac. & Proc. Juris. § 3579 (3d ed.) ("As a general rule reflecting comity and prudence, however, federal jurisdiction should not be exercised until litigants exhaust remedies at the tribal court."); *see*, *e.g.*, *Inglish Ints., LLC*, No. 2:10-CV-367, 2011 WL 208289, at *4 ("Finally, even if there was a basis for federal question jurisdiction, plaintiff would have to exhaust available remedies in the tribal court system before pursuing relief in federal court." (citing *Nat'l Farmers*, 471 U.S. at 855–56 (1985)); *Auto-Owners Ins. Co. v. Tribal Ct. of Spirit Lake Indian Rsrv.*, 495 F.3d 1017, 1021 (8th Cir. 2007) ("But even where a federal question exists, due to considerations of comity, federal court jurisdiction does not properly arise until available remedies in the tribal court system have been exhausted."); *Weeks Const., Inc.*, 797 F.2d at 673 ("The Supreme Court has repeatedly recognized that tribal courts have inherent power to exercise civil jurisdiction over non-Indians in disputes affecting the interests of Indians which are based upon events occurring on a reservation.").

However, the scope of this exhaustion requirement is not well-defined—particularly not in this circuit. *See*, *e.g.*, *Tamiami II*, 63 F.3d at 1040 n.38 (explaining that "the district court did not have a *National Farmers* case before it" when there was no order seeking to enjoin the tribal court). And, in the end, such a requirement does not apply where a plaintiff cannot proceed in federal court for other reasons, as is the case here.

## **CONCLUSION**

Because Plaintiff has failed to state a claim and amendment would be futile, Defendants' Motion to Dismiss, [ECF No. 21], is **GRANTED**, and this case is hereby **DISMISSED *with prejudice***. Defendants' Motion to Quash is **DENIED AS MOOT**. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 23rd day of July, 2025.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**